IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RG4 Holding Co., LLC, ) | |
| ) | Civil Action No. _____ |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ANSWER TO COMPLAINT AND |
| ) | COUNTERCLAIM |
| The Dennis Engineering Group, LLC and ) | |
| The Dennis Group, LLC ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The Dennis Engineering Group, LLC ('Dennis") and The Dennis Group, LLC, ("Dennis Group"), answering the Complaint of RG4 Holding Co., LLC, ("Ruiz") and by way of Counterclaim, allege:

1. Dennis and the Dennis Group denies and every allegation of the Complaint not hereinafter specifically admitted.

2. As to paragraph 1 of the Complaint, on information and belief Dennis and the Dennis Group admit on information and belief that RG4 Holding Co., LLC is a limited liability company organized and existing under the laws of the State of South Carolina but they are without sufficient information to either admit or deny the remaining allegations set forth in paragraph 1 of the Complaint.

3. Dennis and the Dennis Group admit the allegations of paragraph 2 of the Complaint.

4. Dennis and the Dennis Group deny the allegations of paragraph 3 of the Complaint.

5. With regard to paragraph 4 of the Complaint Dennis and the Dennis Group admit that RG4 has brought an action against Dennis and the Dennis Group, and that Exhibit 1 is an Agreement for Engineering and Construction Management Services (the "Phase 1 Agreement")

1

between Rg4 and The Dennis Engineering Group, LLC. Dennis and the Dennis Group deny the remaining allegations of paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

6. Paragraph 5 contains legal conclusions regarding Jurisdiction and Venue to which no response is required, provided however, that to the extent a response is required, Dennis and the Dennis Group deny those allegations.

7. As to paragraph 6 of the Complaint, Dennis and the Dennis Group admit that the facility referred to is located in Florence County, South Carolina. In further responding, the remaining allegations in paragraph 6 of the Complaint are legal conclusions regarding Jurisdiction and Venue to which no response is required, provided however, that to the extent a response is required, they deny those allegations.

## THE AGREEMENT

8. As to paragraph 7 of the Complaint, Dennis and the Dennis Group admit that RG4 and Dennis Engineering Group, LLC entered into the Phase 1 Agreement for Engineering and Construction Management on or about June 30th, 2015. In further responding, Dennis and the Dennis Group state that the Phase 1 Agreement speaks for itself. Dennis and the Dennis Group deny all remaining allegations in paragraph 7 of the Complaint.

9. With respect to paragraph 8 of the Complaint, Dennis and the Dennis Group admit that RG4 and Dennis Engineering Group, LLC entered into the Phase 1 Agreement. In further responding, Dennis and the Dennis Group state that the Phase 1 Agreement speaks for itself. Dennis and the Dennis Group deny all the remaining allegations of paragraph 8 of the Complaint.

10. As to paragraph 9 of the Complaint, Dennis and the Dennis Group admit that RG4 and Dennis Engineering Group. LLC entered into the Phase 1 Agreement. In further responding,

Dennis and the Dennis Group state that the Phase 1 Agreement speaks for itself. Dennis and the Dennis Group deny all remaining allegations in paragraph 9 and footnote 1 of the Complaint.

11. As to paragraph 10 of the Complaint, Dennis and the Dennis Group admit only that Ruiz entered into the Phase I Agreement. In further responding, Dennis and the Dennis Group are without sufficient information to either admit or deny why Ruiz entered into the agreement and/or what it was relying on when it did so, and therefore they deny those allegations. In further responding, Dennis and the Dennis Group categorically deny that any fiduciary relationship was created and/or existed between DGL and Ruiz. In further responding, Dennis and the Dennis Group deny the remaining allegations of in paragraph 10 of the Complaint.

12. With respect to paragraph 11 of the Complaint, Dennis and the Dennis Group admit that RG4 and Dennis Engineering Group, LLC entered into the Phase 1 Agreement. In further responding, Dennis and the Dennis Group state that the Phase 1 Agreement speaks for itself. Dennis and the Dennis Group deny all the remaining allegations in paragraph 11 of the Complaint. Dennis and the Dennis Group categorically deny that any fiduciary relationship was created and/or existed between Dennis and/or the Dennis Group and Ruiz. In further responding Dennis and the Dennis Group state that Denis went above and beyond to deliver a superior project to Ruiz. In further answering Dennis and the Dennis Group deny the remaining allegations in the first paragraph of paragraph 11 of the Complaint. In further responding, they assert as to each subparagraph that:

a. Section 3 (C)(2)(f) of the Phase 1Agreement speaks for itself. They deny the remaining allegations in subsection a of paragraph 11 of the Complaint.

3

b. Section 4(A), RFQ speaks for itself. In further responding the phrase "not to perform extra work" is not in the Phase 1 Agreement. They deny the remaining allegations in subsection b of paragraph 11 of the Complaint.

c. Section 1.01(E) of the Phase 1 Agreement speaks for itself. They deny the remaining allegations in subsection c of paragraph 11 of the Complaint.

d. Section 3(B)(3) of the Phase Agreement speaks for itself. They deny the remaining allegations in subsection d of paragraph 11 of the Complaint.

e. Section 3(C)(2)(a) of the Phase 1 Agreement speaks for itself. They deny the remaining allegations in subsection e of paragraph 11 of the Complaint.

f. Article 11 of the Phase 1 Agreement speaks for itself. They deny the remaining allegations in subsection f of paragraph 11 of the Complaint.

g. Article 11 of the Phase I Agreement speaks for itself. They deny the remaining allegations in subsection g of paragraph 11 of the Complaint.

13. Dennis and Dennis Group deny the allegations of paragraph 12 of the Complaint.

## CONTRACT PERFORMANCE

14. As to paragraph 13 of the Complaint, Dennis and Dennis Group admit that Dennis, at the express direction and authorization by Ruiz began work on what became known as Phase 1 of the Project. Dennis and Dennis Group admit that Dennis, at the express direction and authorization by Ruiz began work on what became known as Phase 2 of the Project. Dennis and Dennis Group deny the remaining allegations in paragraph 13 of the Complaint.

15. Dennis and Dennis Group deny the allegations of paragraph 14 of the Complaint. In further responding, they assert that Dennis was told by Ruiz when Dennis was first retained by

Ruiz well before the Phase 1 Agreement was signed that Dennis was to immediately proceed with engineering and construction on all work in what ultimately became phases 1, 2 and 3 concurrently.

16. Dennis and Dennis Group deny the allegations of paragraph 15 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

17. Dennis and Dennis Group deny the allegations of paragraph 16 of the Complaint. In further responding, any and all budgeting and work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

18. With regard to paragraph 17 of the Complaint, Dennis and Dennis Group admit that Dennis at the express direction and authorization by Ruiz began work on what became known as Phase 3 of the Project. They deny the remaining allegations in paragraph 17 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

19. Dennis and Dennis Group deny the allegations of paragraph 18 of the Complaint. In further responding, any and all budgeting, preparation of cost proposals and work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

20. Dennis and Dennis Group deny the allegations of paragraph 19 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

21. Dennis and Dennis Group deny the allegations of paragraph 20 of the Complaint. Dennis was told by Ruiz when Dennis was first retained by Ruiz well before the Phase 1 Agreement was signed that Dennis was to immediately proceed with engineering and construction on all work in what ultimately became phases 1, 2 and 3 concurrently. In further responding, any

and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

22. Dennis and Dennis Group deny the allegations of paragraph 21 of the Complaint.

23. Dennis and Dennis Group deny the allegations of paragraph 22 of the Complaint.

24. Dennis and Dennis Group deny the allegations of paragraph 23 of the Complaint, including the allegations in footnote 2. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

25. As to paragraph 24 of the Complaint, Dennis and Dennis Group admit that RG4 and Dennis entered into the November 13, 2015 Supplemental Agreement (the "Phase 2 Agreement") for what had become Phase 2 of the Project. They deny the remaining allegations of paragraph 24 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

26. With respect to paragraph 25 of the Complaint, Dennis and Dennis Group assert that the terms of the Phase 2 Agreement speak for themselves. They deny the remaining allegations in paragraph 25 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

27. DGL denies the allegations of paragraph 26 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

28. Dennis and Dennis Group deny the allegations of paragraph 27 of the Complaint. In further responding, any and all work performed on the Project was at the sole and exclusive direction of Ruiz and with Ruiz approval.

29. That as to paragraph 28 of the Complaint, Dennis and Dennis Group admit that Ruiz has improperly failed and continues to fail to pay Dennis over $1,241,594.23 in fees plus interest due and owed. They deny all remaining allegations in paragraph 28, including footnote 3, of the Complaint.

30. As to paragraph 29 of the Complaint, Dennis and Dennis Group admit that RG4 and Dennis entered into the March 14, 20016 Supplemental Agreement Finish-Out (the Finish-Out Agreement") for the remaining work to be completed on the Project as described therein. They deny the remaining allegations of paragraph 29 of the Complaint. In further responding, Dennis and Dennis Group categorically deny that a fiduciary relationship was ever created between Dennis and Ruiz.

31. With regard to paragraph 30 of the Complaint, Dennis and Dennis Group assert that the terms of the Finish-Out Agreement speak for themselves. They deny the remaining allegations of paragraph 30 of the Complaint.

32. Dennis and Dennis Group deny the all of the allegations of paragraph 31 of the Complaint including all paragraph 31's subsections.

33. With regard to paragraph 32 of the Complaint, Dennis and Dennis Group assert that the terms of the Finish-Out Agreement speak for themselves. It is admitted that Dennis filed a mechanics lien against the Project, the terms of which speak for themselves. They deny the remaining allegations of paragraph 32 of the Complaint.

34. Dennis and Dennis Group deny the allegations of paragraph 33 of the Complaint. They specifically deny that Ruiz has paid all undisputed amounts. It is further specifically denied that there are any conditions of payment of the overdue invoices, such as final completion, project close out documentation or that the retainage provisions in the Phase 1 Agreement are applicable to

payment of the past due invoices in the amount of $1,241,594.23 for work under the Finish Out Agreement.

35.  Dennis and Dennis Group deny the allegations of paragraph 34 of the Complaint.

AS TO THE FIRST CAUSE OF ACTION
(Breach of Contract)

36.  As to paragraph 35 of the Complaint, Dennis and Dennis Group incorporate the preceding allegations as if set forth fully herein verbatim.

37.  With regard to paragraph 36 of the Complaint, Dennis and Dennis Group admit that the Dennis Engineering Group, LLC, entered into the Phase 1 Agreement.  In further responding, Dennis and Dennis Group state that the terms of the Phase 1 Agreement speak for themselves. They deny all remaining allegations in paragraph 36 of the Complaint.

38.  As to paragraph 37 of the Complaint, Dennis and Dennis Group admit that the Dennis Engineering Group, LLC, entered into the Phase 2 Agreement.  In further responding, Dennis and Dennis Group state that the terms of the Phase 2 Agreement speak for themselves.  They deny any the remaining allegations in paragraph 37 of the Complaint.

39.  As to paragraph 38 of the Complaint, Dennis and Dennis Group admit that Dennis Engineering Group, LLC entered into the Finish-Out Agreement.  In further responding, Dennis and Dennis Group state that the terms of the Finish-Out Agreement speak for themselves.  They deny any the remaining allegations in paragraph 38 of the Complaint.

40.  With regard to paragraph 39 of the Complaint, Dennis and Dennis Group state that the terms of the Phase 2 Agreement and the Finish-Out Agreement speak for themselves.  Dennis and Dennis Group deny the remaining allegations of paragraph 39 of the Complaint.  In further responding, Dennis states that it in no way breached <u>any</u> part of its agreements with Ruiz.

41. Dennis and Dennis Group deny the allegations of paragraph 40 of the Complaint. In further responding, Ruiz has refused and continues to refuse to pay invoices due and owing to Dennis in the amount of $1,241,594.23.

42. Dennis and Dennis Group deny all allegations in paragraph 41 of the Complaint and subsections (i) through (x).

43. Dennis and Dennis Group deny all allegations in paragraph 42 of the Complaint and subsections (i) through (vi).

44. Dennis and Dennis Group deny the allegations of paragraph 43 of the Complaint.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty)

45. As to the paragraph 44 of the Complaint, Dennis and Dennis Group incorporate the preceding allegations as if set forth fully herein verbatim.

46. Dennis and Dennis Group deny the allegations of paragraph 45 of the Complaint.

47. Dennis and Dennis Group deny that allegations of paragraph 46 of the Complaint.

48. As to paragraph 47 of the Complaint, Dennis and Dennis Group state that the terms of the agreement entered into by Ruiz and the Dennis speak for themselves. They deny the remaining allegations of paragraph 47 of the Complaint. In further responding, Dennis and Dennis Group categorically deny that a fiduciary relationship was created between the parties.

49. Dennis and Dennis Group deny that allegations of paragraph 48 of the Complaint.

50. Dennis and Dennis Group deny that allegations of paragraph 49 of the Complaint and subsections (i) through (vii).

51. Dennis and Dennis Group deny that allegations of paragraph 50 of the Complaint

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

52.     Plaintiff has failed to state a claim against Dennis and the Dennis Group upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

53.     If the Plaintiff was damaged as alleged, then its damages occurred as a result of the acts and/or omissions of persons or entities for whose conduct Dennis nor the Dennis Group was legally liable nor responsible.

**THIRD AFFIRMATIVE DEFENSE**

54.     The losses, if any, sustained by the Plaintiff were the result of conduct of persons or entities over which neither Dennis nor the Dennis Group whom DGL had control or responsibility, nor for whose conduct Dennis or the Dennis Group is thus liable.

**FOURTH AFFIRMATIVE DEFENSE**

55.     Plaintiff's claims are barred by estoppel, release, laches, consent, unclean hands and/or waiver.

**FIFTH AFFIRMATIVE DEFENSE**

56.     Plaintiff has incurred no damages as a result of any conduct of Dennis and the Dennis Group.

**SIXTH AFFIRMATIVE DEFENSE**

57.     Plaintiff's recovery is reduced, in whole or in part by its own comparative negligence and/or Plaintiff's recovery is barred by its own comparative negligence.

### SEVENTH AFFIRMATIVE DEFENSE

58. Plaintiff is not entitled to recover from Dennis and Dennis Group as Dennis and Dennis Group have at all times complied with the applicable standard of care.

### EIGHTH AFFIRMATIVE DEFENSE

59. Plaintiff's claims are barred as to the Dennis Group by lack of privity with the Dennis Group.

### NINTH AFFIRMATIVE DEFENSE

60. Plaintiff's claims are barred in whole or in part by its failure to mitigate damages.

### TENTH AFFIRMATIVE DEFENSE

61. Plaintiff's claims against Dennis and Dennis Group are barred as there is no causal connection between any alleged act, error or omission by Dennis and Dennis Group and the Plaintiff's alleged damages.

### ELEVENTH AFFIRMATIVE DEFENSE

62. Plaintiff's claims against Dennis and Dennis Group are barred by the doctrine of accord and satisfaction.

### TWELFTH AFFIRMATIVE DEFENSE

63. Dennis acted in good faith with respect to its interpretations, decisions, determinations, and other actions performed and is, therefore, entitled to immunity from the claims asserted in this action.

### THIRTEENTH AFFIRMATIVE DEFENSE

64. Dennis and Dennis Group reserve the right to assert further affirmative defenses to the extent allowed by law and to the extent the additional defenses are revealed during discovery.

## **COUNTERCLAIMS OF THE DEFENDANT THE DENNIS ENERING GROUP, LLC.**

### **PARTIES**

1. The Dennis Engineering Group, LLC is a limited liability company, organized and existing pursuant to the laws of the State of Delaware. Dennis is authorized to do business in the State of South Carolina and has done business in Florence County at all times relevant.

2. Defendant The Dennis Group, LLC (hereinafter referred to as "Dennis Group"), is not a legal entity. Dennis sometimes does business as the Dennis Group.

3. On information and belief, R4G Holding Co., LLC (hereinafter referred to as "Ruiz") is a limited liability company, organized and existing pursuant to the laws of the State of South Carolina and owns the food processing facility in Florence, South Carolina (hereinafter referred to as the "Facility" or the "Project"), which is the subject of this action.

### **FACTUAL ALLEGATIONS**

4. In April, 2015, Ruiz retained Dennis to provide certain engineering, construction management and construction services at the Project.

5. Ruiz was well behind schedule for the planned new construction, renovation and equipment installation at the existing facility, and Ruiz did not have the manpower or expertise to manage a fast track project of this magnitude.

6. Dennis was instructed by Ruiz that schedule and completion were the preeminent factors, not cost.

7. From the very outset of Dennis involvement, Dennis was directed by Ruiz to provide engineering, construction management and construction services for the entire scope of the Project.

12

8. The Project was ultimately divided into three phases, broadly consisting of a new addition, renovation of the existing facility, and the installation of extensive food processing machines and equipment.

9. The required work on all phases was to be budgeted, costs determined, subcontractors selected, and worked commenced as soon as possible, and the work on all phases was to be performed concurrently.

10. Ruiz's on-site Owner's Representative, David Hipenbecker, was specifically authorized by Ruiz to approve the Project budget as it was developed, approve change orders, render decisions promptly, furnish information expeditiously, and to act on Ruiz's behalf in connection with the Project.

11. Because of the "fast-track" nature of the Project, and with Ruiz's authorization and direction, Dennis proceeded with design, budgeting, defining costs, locating and contracting with Ruiz approved subcontractors, and commencement of the work on all three phases from the beginning of Dennis's involvement.

12. While all three phases were proceeding and for each phase concurrently, Ruiz directed Dennis to provide design for Ruiz approval, define cost and prepare budgets for Ruiz's approval, and procure the work for Ruiz approval. Once the design was prepared, the construction costs for the various work packages determined and subcontractors for each work package identified, Ruiz would review them and if acceptable, approve them in writing, at which time Dennis was instructed and authorized by Ruiz to issue subcontracts for the work and proceed with work on all three phases concurrently.

13. Detailed records of working budgets, approved cost and committed work were kept by Dennis and updated continually, and provided to Ruiz and continually reviewed by Ruiz.

14. This procedure was consistent with the customary process followed to expedite fast track construction projects such as the Ruiz Project

15. As the cost of the Phase 1 (new addition) was finalized, Ruiz and Dennis finalized the budget for that phase. The Agreement for Engineering and Construction Management Services dated June 30, 2015, (the 'Phase 1 Agreement") was executed by the parties.

16. At the time the Phase 1 Agreement was finally executed on July 1, 2015, work on all three phases of the work was well under way at the Project at the direction of and with the full participation of Ruiz.

17. With reference to the remaining Phase 2 and Phase 3 work, Ruiz and Dennis continued the procedure previously adopted. Once the design, the construction costs and subcontractors for the remaining work had been approved by Ruiz, Dennis was instructed and authorized to issue subcontracts for the work and proceed with the work on all three phases. Dennis continued to work with Ruiz to finalize the scope and budget for Phases 2 and 3.

18. By November 15, 2015 the budget and work scope had been established for the Phase 2 work, and Ruiz and Dennis executed the Supplemental Agreement (the "Phase 2 Agreement") finalizing the budget and work scope for Phase 2. However, the work in in Phase 2 had long since been authorized and approved by Ruiz, and in fact was nearing completion.

19. With reference to the remaining Phase 3 work, Ruiz and Dennis continued the procedure previously adopted. Once the design, the construction costs and subcontractors for the remaining work had been approved by Ruiz, Dennis was instructed and authorized to issue subcontracts for the work and proceed on work on all three phases. Dennis continued to work with Ruiz to finalize the scope and budget for Phase 3.

20. Throughout the entire Project, through final completion detailed records of working budgets, approved cost and committed work and costs incurred were kept by Dennis, updated continually, and were provided to Ruiz on a frequent basis and continually reviewed by Ruiz.

21. By February 2016, all work in Phases 1 and 2 and a major portion of the work in Phase 3 had been authorized in writing by Ruiz, and the authorized work on all three phases was nearing completion. Production line 1, a major portion of the Phase 3 work had been completed and was actually being operated by Ruiz to produce vast quantities of its Mexican food product for sale.

22. Unexpectedly, Dennis received a February 12, 2016 letter from Ruiz's home office in California questioning invoices submitted by Dennis and questioning Dennis's authorization to perform Phase 3 work.

23. This came as a great surprise to Dennis since it had written authorization from Ruiz for the Phase 3 work it was performing and for which it had billed. Further, it was obvious by observation at the site that Phase 3 work was being performed since major equipment which was part of Phase 3 had been and was being installed, some of which was actually being operated by Ruiz.

24. By letter dated February 17, 2016, (Exhibit 1) Dennis responded that the work had been authorized in writing by Ruiz, and the process and procedures established by Ruiz at the site had been followed.

25 Having been informed that Ruiz considered a portion of the Phase 3 work to be unauthorized, Dennis asked for authorization to proceed with the portion of the Phase 3 work for which Dennis had not previously received written authorization.

26. Ruiz initially declined, so Dennis proceed with the work for which it had received written authorization from Ruiz, including a portion of the Phase 3 work. Work on the portion of the Phase 3 work Ruiz claimed was unauthorized was stopped pending receipt of authorization by Ruiz to proceed.

27. During this period, Dennis was told that Mr. Hipenbecker had been fired by Ruiz, and replaced as Ruiz's Owner's Representative under the contract by Mr. Hipenbecker's boss, Brian Miller, who had also been involved in the Project from the time Dennis was retained.

28. After a substantial delay, Ruiz and Dennis entered into the Supplemental Agreement Finish-Out (the "Finish-Out Agreement) dated March 14, 2016, and signed at the end of March 2016 (Exhibit 2) which authorized the remaining work and established a budget of $6,496,654 for completion of the work contained in the Close Out Proposal attached to the Finish-Out Agreement

29. With the exception of the unpaid portion of an invoice submitted in December, 2015, for which no explanation for nonpayment has ever been received, Ruiz also paid all overdue invoices for work previously performed.

30. As provided in Paragraph 4 the Finish-Out Agreement, Ruiz was to pay for the work to complete the Project when invoiced by Dennis without deduction of retainage or offset.

> 4. Nothing in this agreement shall be construed as obligating Owner to pay Engineer/Construction Manager for prior amounts billed to Owner or defined as committed in the Close-Out Proposal. <u>This agreement does, however, obligate Owner to pay Engineer/Construction Manager for all future work specified in the Close-Out Proposal. For clarity, notwithstanding any other provision of this agreement or the Contract, Owner shall pay Engineer/Construction Manager those direct personnel expenses and reimbursable costs for all properly completed future work specified in the Close-Out Proposal if such work was performed on or after March 14, 2016; provided further that Owner retains the right at Project close out to seek reimbursement of any portion of amounts paid for work performed after March 14, 2016 if Owner would have had the right to withhold payment for such amounts under Paragraph 11 of the Contract.</u>" [Emphasis added]

31. As provided in the Finish-Out Agreement, Dennis continued with completion of the Project and promptly finished the Project under the cost budgeted in the Finish-Out Agreement.

32. Ruiz paid the invoices submitted by Dennis in March, April, May and June without retainage or offset as required by the Finish-Out Agreement

33. At the end of June 2016, Production Line 2 was completed and the Facility turned over to Ruiz fully operational. Since the end of June, 2016, Ruiz has been operating this major food processing facility, producing vast quantities of its Mexican food product for sale, producing, Dennis is informed and believes, millions of dollars of income for Ruiz.

34. Since the date when the plant was completed and turned over to Ruiz fully operational, Ruiz has failed and refused to pay any invoice submitted by Dennis after Facility turnover at the end of June 2016 in breach of the terms of the Finish-Out Agreement.

35. Dennis has completed its work as required by the Finish-Out Agreement and the various other agreements between the parties, and the Project was delivered to Ruiz on time (to the extent allowed by Ruiz) and under budget.

36. There is currently One Million Two Hundred Forty-One Thousand Five Hundred Ninety-Four and 23/100 ($1,241,594.23) in overdue invoices for work performed pursuant to the Finish-Out Agreement to complete the Project and the various other agreements between the parties.

37. Dennis has made repeated demand for payment and Ruiz has wrongfully refused to pay.

38. Dennis has filed a mechanics lien against the Project in Florence County, South Carolina.

39. Dennis has performed all obligations required and satisfied all conditions precedent for bring this action.

40. In addition to the unpaid contract amount, Dennis is entitled to interest and its cost and expenses incurred as a result of Ruiz's wrongful refusal to pay, including collection costs, court and litigation costs and expenses and expert and attorneys' fees.

## FIRST CLAIM FOR RELIEF
(Breach of Contract By Ruiz)

41. Dennis incorporates the allegations contained within Paragraphs 1 through 40 above as if repeated verbatim herein.

42. Pursuant to the Finish-Out Agreement and the other agreements between the parties, Ruiz was bound to pay Dennis for the labor and materials provided to the Project.

43. Despite repeated demand, Ruiz has failed and refused to pay the remaining amount due, or any of it, the total amount past-due and owing as of November 8, 2016 being One Million Two Hundred Forty-One Thousand Five Hundred Ninety-Four and 23/100 ($1,241,594.23) Dollars in breach of the Finish-Out Agreement and the other agreements between the parties as set forth in the attached affidavit (Exhibit 3) of John Lapinski, Controller of Dennis.

44. Dennis has made demand on Ruiz pursuant to South Carolina Code § 27-1-15. Therefore, Dennis is informed and believes that it is entitled to recover its attorneys' fee from Ruiz as well as interest at the judgment rate from the due date of the invoices.

45. Dennis has been damaged by Ruiz's breach of contract in that it has not been paid the amounts due when due, and been denied the use of funds to which it is duly and lawfully entitled.

46. Dennis is informed and believes it is entitled to judgment against the Ruiz in the amount of One Million Two Hundred Forty-One Thousand Five Hundred Ninety-Four and 23/100

($1,241,594.23) Dollars, and interest at the legal rate of Eight and three-quarters (8¾ %) percent, plus reasonable attorney's fees and costs, all pursuant statute.

WHEREFORE, Dennis and Dennis Group having fully answer the Complaint against them and Dennis having fully stated it Counterclaim against Ruiz, Dennis and Dennis Group demand:

(a) Ruiz have and recover nothing form Dennis and the Dennis Group, and that Ruiz's Complaint be dismissed.

(b) Judgment be granted on Dennis' Counterclaim against the Ruiz, in the amount of One Million Two Hundred Forty-One Thousand Five Hundred Ninety-Four and 23/100 ($1,241,594.23) Dollars, plus interest at the statutory rate.

(c) Dennis and the Dennis Group be awarded the costs of this action, including collection costs, court and litigation costs and expenses, expert witness and attorneys' fee.

(c) Dennis and the Dennis Group be granted such other and further relief as the Court deems just and proper.

s/ R. Davis Howser
R. Davis Howser
rdhowser@hnblaw.com
D.S.C Federal Court ID: 1984
Howser, Newman & Besley, LLC
Post Office Box 12009
Columbia, SC 29211
Telephone: (803) 758-6000
Facsimile:  (803) 758-4445
Attorney for the Defendants The Dennis Engineering Group, LLC and The Dennis Group, LLC

and

               Kenneth B. Walton
               of LEWIS BRISBOIS BISGAARD & SMITH, LLP
               One International Place
               Suite 350
               Boston, MA 02110
               857-313-3936
               Ken.Walton@lewisbrisbois.com
               *Pro Hac Vice* application to be submitted

December 2, 2016